Cheryl Lynn, we're calling Nkomo v. Attorney General now. You have the floor. You've asked for how many minutes again? Five minutes of rebuttal time, please. Done. Please proceed. Thank you. Good afternoon. May it please the Court. My name is Cheryl Lynn of Costa Rica Soto Gonzales and San Lujano, and I am appearing on behalf of Petitioner Emerald Nkomo. In this immigration case, Petitioner Ms. Nkomo seeks reopening of her immigration matter so that she may ask to remain with her family in the United States, her home for over three decades. That opportunity to simply ask, however, was foreclosed on her due to the government's inaction. Can I ask a question? You know, I lived in Southern Rhodesia, now Zimbabwe, for a year, and I'm very familiar with Joshua Nkomo. Is he Emerald Nkomo's father? No. They are – it's a – I understand Nkomo is a very common name. However, they are not related. Okay. Thank you. And I've got a quick question for you too, Ms. Lynn. Well, maybe not so quick. The – you know, we've read your briefing, and one of the issues that comes up and that the government relies on, of course, is the assertion that you did not ask the court – you did not ask, excuse me, the BIA, you didn't bring it up in the agency, that equitable tolling was what Nkomo was looking for. Can you – I mean, you hit it some in your reply brief, but is it not the case that if you want equitable tolling, you've got to ask for equitable tolling? Your Honor, our – Ms. Nkomo is – had requested equitable tolling implicitly, because in her motion, she showed changed circumstances. And a showing of changed circumstances is, in fact, in practice, practically being a request for equitable tolling, because by demonstrating circumstances that didn't exist before the filing deadline, the logical remedy is for the deadline to be tolled. Yeah, I know you say there's no such thing as magic words, but isn't there a certain magic in asking for what you really want when you say we implicitly asked for it or it was inherent? Do you not – do you forfeit rights when you're not explicit about what it is you're looking for? No, Your Honor. I believe that under the – as you so correctly stated, that there – it is true in the law and the circuit, there's no – it's unnecessary to use magic words. I believe that came from Lau versus Attorney General. And then according to Joseph versus Attorney General, the alien only needs to make some effort to put the board on notice, and Ms. Nkomo had done so in her motion to reopen. There was evidence of the two elements of equitable tolling are due diligence and extraordinary circumstances that prevented timely filing. So in her – she had presented several pieces of evidence of her due diligence. For example, shortly after proceeding, she – her U.S. citizen husband had filed an immediate relative petition on her behalf for USCIS. And in that – and during the time that it was pending, she made numerous email requests to USCIS, and those were all included as attachments in the motion to reopen. I can direct the court to pages 35 to 38 of the administrative record that show copies of those email requests. She even went through the exceptional measure of taking a – of filing a petition for writ of mandamus in federal district court, which – and a copy of that petition was also included in the motion to reopen. She also exercised her appeal rights by filing an appeal before the BIA of the underlying order and as well before this court and onto the Supreme Court of the underlying order. So I believe that she sufficiently made enough effort to show the – to meet the due diligence prong with regard to the extraordinary circumstances. Well, are you asking us to make the judgment in the first instance about whether she should get equitable tolling, or are you asking us to send it back and have the BIA determine whether she's eligible for that? I'm asking the court to make the determination. I would – I don't see it as the first instance, but I do believe that under Guerrero-Lazuria, this court has the jurisdiction to reopen the case and the prong for it were the – Is that the better course or – assume we – assume for the sake of discussion here we agreed with you. Why wouldn't we let the agency itself make a judgment about whether this was one where equitable tolling ought to be made, ought to be granted? Well, Your Honor, if – in this case, what this – what the board has essentially done by denying her motion to reopen is it's rewarded the government for not acting on a petition that was pending for over 18 months when the normal processing time is 8 to 10 months. Well, and what I'm suggesting to you and what I'm trying to get at is if we were to agree with you that the court didn't – you know, the court here seemed to – excuse me, the BIA seemed to – at least you argue that it says, well, we can't do that here. We don't have – you know, we can't equitably toll here. And we looked at that and we said, that's just wrong. You could equitably toll here, and in fact, there may be some good reasons why you'd want to grant equitable tolling here, but we're not deciding that. You decide that. That's up to you. Why – yeah. Why would that be an outcome that you would think inappropriate? in that particular case and reopen proceedings. So the court is properly suited to be able to make these determinations as opposed to an administrative agency that is actually part of the executive branch. Yeah, I'm not questioning our power. I'm asking you about whether, as a matter of administrative law, it's the better part to let the agency handle it in the first instance. And I hear you saying, no, we should do it. Have I got you right? Yes, that's correct. Okay. Judge Mady or Judge Roth? I have nothing further. You have nothing at this time, thank you. Okay. Well, then Ms. Lynn, if you've got something you want to say, you've got a couple minutes of free time, or you can just save it for rebuttal. I would just make a few more statements. As I previously already stated to the court, that the court has authority to reopen this case. And the reason why we're requesting reopening is because we're requesting equitable results in this case. It would allow a long-time resident of the United States to stay with her family, to simply ask. And unfortunately, that chance, as I stated before, was foreclosed because the government delayed her petition for a period of approximately 18 months. Much of that time was while she was in custody. And she presented before the BIA more than sufficient evidence, and she made more than some effort, as the standard of the circuit applies of her due diligence in extraordinary circumstances. It's simply that her choice of words in presenting this evidence should not be used as a reward to the government's inaction. Well, she's not pro se. She had counsel, right? I mean, it's not a circumstance where we have to say, try to figure out what she meant. She's got a lawyer telling the BIA what she meant, right? That's correct. But in terms of public policy, it would grant access to the courts among pro se petitioners, who many, many non-citizens don't have access to counsel. Yeah. All right. Well, thank you, counsel. We'll now hear from Ms. DiMaggio. The floor is yours. Good afternoon, Your Honors. Giovanni DiMaggio on behalf of the Attorney General, and may it please the Court. Your Honors, the Board appropriately did not consider equitable tolling in denying Ms. Nekomo's admittedly untimely motion to reopen because she did not request equitable tolling, and this Court in turn lacks jurisdiction to consider this unexhausted issue. The proof of this, Your Honors, is in the proverbial pudding, which consists of two simple ingredients. The administrative record? I'm sorry, Your Honor, are you asking a question? Yeah, right out of the box when you say we lack jurisdiction. I'm eager for you to respond to the argument that when the BIA in its July 3, 2019 order said, to the extent the respondent is seeking reopening in light of certain equities, ellipse, we do not have the authority to grant relief solely on equitable or administrative grounds. Why should we not read that to be a direct statement and in fact a misstatement of law about the BIA's power to grant equitable tolling and hence a reopening? So there's two parts to the answer to that. First of all, you have to read that in juxtaposition to the earlier, the paragraph right above it, where the Board clearly shows that it understands what is before it. This is an untimely motion to reopen that doesn't qualify for any statutory or regulatory exception to the timeline. And then a motion in the alternative requesting sui sponte relief, which it obviously denied. That last part that Your Honor puts his finger on, which is also coupled with a citation to a matter of Medina, is not an incorrect statement of the law, but actually is a correct statement of the circumstance and fact that the Board does not have the power to grant general equitable relief from removal. For a little bit of context here, this is something that is commonly paired with, for example, a request by a petitioner for prosecutorial discretion or a grant of humanitarian parole. Two things which are expressly written in either statute or regulation as something for DHS to do or not do. In a matter of Medina, that was a case where the Board clarified basically once and for all, because it's a 1988 case that continues to be cited to date, that an IJ cannot grant relief that goes outside of the boundaries of either the INA or the regulations pertaining thereto. In a matter of Medina, there was a case where an IJ just kind of went out on a limb and granted a form of relief that was found in international law that was not codified in the INA or regulation. Okay, so the Board, DiMaggio, if we accept that that citation to entering the matter of Medina clarifies what the Board was saying there and that it was not a reference to equitable tolling, then address Ms. Lynn's primary argument, which is, look, if you read what she said to the Board, and we have, she's clearly asking for equitable relief. She's clearly making the case that the government stood in the way of her being able to file this on time. The government delayed this. It wasn't until she filed a mandamus petition that the government got off the dime and scheduled this for a hearing, and that's when she was able to move forward, so she did exhaust. You know, take that directly and head on, if you would. Her assertion that they did ask for equitable tolling, and it doesn't matter whether they used the words equitable tolling. Everything they said tends to that. Sure, Your Honor. So taking that head on, it's unsupported by the record, and that includes, as the record expands, to the extent that we have the addition of briefing on petition for review. So what I mean by that is this. If you look at the motion to reopen, which is in Administrative Record pages 10 to 21, and the Board decision, which is, I believe, 3 through 5 or so, you see that both of these documents proceed in lockstep following a two-tier structure that tracks the structure of the motion to reopen, which is part one. And I'm paraphrasing here, but for the benefit of, in the interest of time, I'm paraphrasing. The motion to reopen part one is, listen, please grant my untimely motion to reopen based on, quote-unquote, changed circumstances. And in support of that, I'm going to cite the two cases that respectively deal with the changed country conditions exception to motion to reopen 90-day timeline and sua sponte relief. That's it. And compare that. Except for the sake of discussion, that the argument was inartfully framed, that it should have talked about equitable tolling in those words. But when it says, and it does say, look, the refusal, this is on the Administrative Record in the appendix at 14, this relief was not available to the respondent previously due to the refusal of USCIS to conduct an interview and adjudicate the petition despite numerous requests. The petition was filed. It gives the date, a period of 18 months. It's delayed, and then it says in the interview, purported reason for this was, she states what that was, and then says, thus the delay of 18 months for the petitioner to be produced was unnecessary as petitioner's petition, I assume is meant to say, was ultimately laid, or presence was ultimately laid. Therefore, this relief could not be made available before the respondent's removal order became filed due to the government's delay. That is, you know, so they miscited cases about changed country conditions. It's obvious she's talking about her case, her circumstances, and the government's delay and saying, hey, give me a break on this timing. You guys held it up. When we read that, how could we understand that as anything other than a statement that says, in fairness, you should give me this opportunity. In other words, equitable tolling. Well, the reason you can read it as anything other than that statement is because it is couched in something other than that framework, Your Honor. Just not to reiterate, but this is very firmly couched in a two-part request. This is emotionally open that is untimely based on changed circumstances, or in the alternative, this is a request to respond to relief. And it's in sharp contrast to the opening brief. It's clearly not, I mean, you've just noted and I've just noted, this has nothing to do with country circumstances in Zimbabwe. So when you say it's in that context, so that's the only way to understand it, it's obvious it doesn't mean that. Because nothing is said about Zimbabwe, it's all about her. So I guess what you're saying is she put the wrong label on it, that's the end of it. That's the government's position. But got it right? Well, it's not just about the label, Your Honor. I mean, yes, she didn't use the term equitable tolling, which her same attorney that briefed the case before the board used 23 times in the opening brief with the court. She also didn't use the term diligence, an important element of the equitable tolling claim, which is used 13 times in the opening brief. She also didn't cite any authority whatsoever. Hello? Let me interrupt with a question. I am extremely concerned about the delay of the government in deciding the I-130 petition that they had before it. And the fact that the government delayed in determining this petition beyond the point where it was any good to her, really I find reprehensible conduct on the part of the government. And in my mind, a remedy is necessary to stop this type of conduct on the part of the government. Well, Your Honor, we're wading into essentially determinations that would underlie maybe a due diligence or an extraordinary circumstance analysis that was not performed here by the board. If Your Honor thinks that this is sufficient to raise an equitable tolling claim, then the appropriate remedy to address the point that was made earlier by Ms. Lynn would not be for the court to consider this in the first instance. It would be for the court to remand this to the board for them to consider this in the first instance, which is the appropriate remedy under INS v. Ventura. And this is not sufficiently developed for the court to address. What Your Honor is referencing, mind you, is basically an allegation that Petitioner makes at this point in time and is based on a limited record that she provided before the agency, which starts with an email chain where she requests, actually, that DHS please put in writing so that she could help nudge along the BOP in furloughing her then-detained U.S. citizen spouse so that he could attend an interview, which has a slightly different hue to it than what Petitioner presents now, which is that they were banging the drum all along about he needed to be there for the interview. But all of this is to say this is wading too deeply into the discretionary determinations that might have been applied here in the factual determinations, which were not conducted by the agency precisely because this claim was not raised before the board. And the last point I was going to make on my earlier stream before your question was that- Hang on, hang on, hang on. Your argument isn't holding together. You're saying this claim wasn't made before the board, but at the same time there was this inordinate delay that she was complaining about. And, you know, I can see that perhaps the best thing to do is to send it back, but at the same time this conduct on the part of the government seems to me something that is well worth looking into. And if the best way to do it is to send it back, then that would be a position I could accept. But I still am concerned by a bureaucratic flurry which really seems to be hiding this refusal on the part of the government to decide an I-130 matter in the seven to eight months it usually takes, instead taking 17 months to the point where it was impossible for the relief that would be granted to be of any good. So if you say the best way to do it is through a remand, that certainly is something I would consider. Well, Your Honor, that remand would have to be coupled up with your finding along with your colleagues that the issue of equitable tolling was squarely presented to the board and then the board failed to address it. That is the only question that is preserved for review at this stage, which is whether the board erred as a matter of law by failing to address an equitable tolling claim that Ms. Nekomo claimed she raised. The government obviously vehemently contends she did not raise that claim. Okay, Judge Mady, do you have anything for Mr. DiMaggio? I don't, thank you. Judge Roth, anything else you wanted to ask? Nothing further, thank you. Okay, thanks. All right, thanks, Mr. DiMaggio. Ms. Lynn, we'll have you back for your rebuttal, please. Thank you, Your Honor. The only point that I want to highlight, due to the line of questioning, I do want to come back to the line from the last paragraph of the board's decision, which Your Honor has already highlighted to the government, to the extent that the respondent is speaking reopening in light of certain equities, ellipses. We do not have authority to grant tolling equitable or humanitarian grounds. By referencing in light of certain equities, the board was implicitly rejecting equitable tolling because a request for equitable tolling requires consideration of certain equities and fairness, so the logical inference is that the board was considering. Ms. Lynn, Mr. DiMaggio says you guys, you Third Circuit people, you just can't read that fairly that way. He would have said it more politely, you judges. You can't read it that way because we cited the matter of Medina, and the matter of Medina has nothing to do with equitable tolling. It's all about sort of freewheeling granting of equitable relief that's not available under the strictures of the law. So the site for Medina puts to bed any argument that this is really a raising sua sponte of equitable tolling by the board. What's your response to that argument? Well, I actually believe that the matter of Medina is the reference was actually an apposite because it involves an alien who is seeking protection under the Geniza Convention, and so that actually doesn't have to do with a motion to reopen context. However, I do want to point out that even by that very statement, the board made an error of law because they do have a remedy under equitable or humanitarian grounds, and that would be to consider equitable tolling. Okay. Judge Mady or Judge Roth, any questions for Ms. Lynn? No questions. No, nothing further. All right. Ms. Lynn, Mr. DiMaggio, we thank you very much for your argument. We've got the case under advisement.